

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DG:JRS
F. #2016R01074

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 24, 2022

By ECF

The Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Andrii Gerasymenko
                  Criminal Docket No. 18-51 (S-1) (ENV)

Dear Judge Vitaliano:

        The government respectfully submits this letter in connection with the defendant's sentencing, currently scheduled for April 29, 2022. The government respectfully submits that a below-Guidelines sentence of a year and a day would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case. In addition, the government respectfully submits that the Court should impose a fine within the Guidelines range set forth in the plea agreement.

I.    Background

        Between 2013 and 2016, the defendant was a participant in a scheme to fraudulently obtain "rebuilt" vehicle titles for salvage vehicles. See Presentence Investigation Report ("PSR") ¶¶ 4-5. These vehicles were then sold to unsuspecting customers around the country.

        A "salvage" vehicle is a vehicle that an insurance company has taken ownership of because of extensive damage or theft. A "rebuilt" vehicle is a vehicle that was previously classified as a salvage vehicle but has been rebuilt to road-worthiness in compliance with regulatory standards. In some states, such as New York, this process involves an in-depth inspection by the Department of Motor Vehicles that can be costly and time consuming. In other states, the regulatory burden is lower. In Indiana, for example, all that is required for a vehicle to be classified as "rebuilt" is for a police officer to examine the vehicle and certify that it meets state standards.

The defendant's co-conspirator Inna Chebanenko found an even simpler process. Forgoing any inspection whatsoever, Chebanenko and her co-conspirators forged certifications by fictious Indiana police officers and used those certifications to obtain rebuilt titles for salvage cars. PSR ¶ 5. These cars could then be sold to unsuspecting customers at a significantly higher price with no state oversight.

Apparently realizing that other unscrupulous car dealers might be interested in avoiding regulatory requirements, Chebanenko offered her service to other dealers around the country. In exchange for a fee, Chebanenko engaged in wash transactions with other car dealers under which the other car dealer would transfer ownership of a salvage vehicle to Chebanenko or to one of her co-conspirators (including the defendant), Chebanenko would fraudulently obtain a rebuilt title for the vehicle, and Chebanenko or another co-conspirator would then transfer the ownership of the purportedly "rebuilt" vehicle back to the original owner. These transactions existed only on paper and served no purpose other than to further the fraudulent scheme — because the cars were never actually inspected, the cars themselves did not have to come to Indiana or physically change hands at all.

In many cases, Chebanenko used her own Indiana car dealership for the wash sales. But she also frequently used other car dealerships owned by other conspirators, most commonly the defendant, as straw owners. PSR ¶ 5. When the defendant allowed Chebanenko to use his dealership for the scheme, he also signed false affidavits as the purported owner of the car, averring that the cars had been properly repaired and that all information in the paperwork was accurate. On some occasions, the defendant signed blank forms to allow Chebanenko to reproduce his signature as needed. Although the defendant was not a driver or principal of the scheme, he was aware of Chebanenko's conduct and willingly assisted the scheme by allowing her to use his dealership for the wash transactions and by signing (or allowing his signature to be used) on fake affidavits. Chebanenko and the defendant engaged in these fraudulent transactions at least hundreds of times. PSR ¶ 7.[1]

II.     Sentencing Guidelines

The Guidelines Offense Level calculation, as set forth in the defendant's plea agreement, is as follows:

| | | |
|---|---|---|
| Base Offense Level (§ 2B1.1(a)(1)(B)) | | 7 |
| Plus: | Loss More than $250,000 (§ 2B1.1(b)(1)(G)) | +12 |
| Plus: | Ten or More Victims (§ 2B1.1(b)(2)(A)(i)) | +2 |

---

[1] Law enforcement agents reviewed a sample of approximately 750 files out of a total of approximately 2,700 rebuilt title applications submitted by Chebanenko and her co-conspirators. Of those 750, law enforcement determined that approximately 90% of them had forged certifications.

|        |                                         |     |
|--------|-----------------------------------------|-----|
| Less:  | Minimal Role (§ 3B1.2(a))               | -4  |
| Less:  | Acceptance of responsibility (§ 3E1.1)  | -3  |
| Total: |                                         | 14  |

The PSR, by contrast, calculates the defendant's offense level as 16. See PSR ¶ 35. The difference in the two calculations is that the PSR, unlike the plea agreement, treats the defendant's participation as minor (warranting a two-level reduction) rather than minimal (which would warrant a four-level reduction). See PSR ¶ 29. Although the government believes the issue is close, the government submits that a minimal role adjustment is more appropriate because the defendant played a largely passive role in the fraud and may not have been aware of its full scope.

Based on a Criminal History Category of I, as set forth in the PSR and the plea agreement, the PSR calculation yields a Guidelines imprisonment range of 21 to 27 months (PSR ¶ 72) and the plea agreement yields an imprisonment range of 15 to 21 months. In addition, pursuant to U.S.S.G. § 5E1.2(c)(3), the Guidelines range fine under the PSR's calculations is between $10,000 and $95,000 (PSR ¶ 79) and the Guidelines range fine under the plea agreement's calculation is between $7,500 and $75,000.

III. Argument

The government respectfully submits that a slightly below-Guidelines sentence of a year and a day's imprisonment, along with a fine within the Guidelines range set forth in the plea agreement, would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case. The government notes that while it believes that a Guidelines sentence would otherwise be appropriate given the circumstances of this case, Chebanenko was sentenced to year and a day in prison, and the government submits that sentencing the defendant to a higher sentence than Chebanenko is not warranted.

A sentence of a year and a day appropriately takes into account the seriousness of the defendant's conduct. In addition to assisting in defrauding hundreds of customers, the defendant recklessly facilitated the sale of salvage cars without any evaluation by anyone of whether those cars were roadworthy or safe. Such a sentence also would appropriately deter the defendant and other similarly situated individuals from assisting other fraudulent schemes — conduct that is often difficult to detect — and avoids unwarranted disparities.

The government respectfully submits that the defendant's claim in his sentencing memorandum that he believed the cars were actually being inspected in Indiana is false and should be rejected. The defendant himself used Chebanenko to obtain fraudulent rebuilt titles for his own cars, and he was aware that the cars were never taken for inspection. There is no reason to believe that he expected any other practice for the hundreds of other cars funneled through his dealership and for which he knowingly signed false affidavits.

Accordingly, in this case, the sentencing factors set forth in Title 18, United States Code, Section 3553(a), weigh in favor of a sentence of a year and a day's imprisonment and a fine within the Guidelines range set forth in the plea agreement. See 18 U.S.C. § 3553(a)(2)(A)-(B).

IV. Conclusion

For the foregoing reasons, the government respectfully submits that a sentence of a year and a day's imprisonment and a fine within the Guidelines range set forth in the plea agreement would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/ Jonathan Siegel
Jonathan Siegel
Assistant U.S. Attorney
(718) 254-6293

cc: Clerk of the Court (ENV) (by ECF)
Robert A Fisher, Esq. (by ECF and Email)
Shayna Bryant, United States Probation Officer (by Email)